We'll now move to case number six, United States v. Madgett. Case number 18-2665. And we'll begin with Mr. Cronin. Good morning. May it please the court and counsel. My name is Dan Cronin and I represented the appellant George Madgett in the district court, where he received an upward variance to 84 months of imprisonment for being a felon in possession of a firearm. We're asking this court to remand for resentencing because that upward variance was flawed by two procedurally unreasonable conclusions. One was that Judge Rosenstengel relied, in part, on Appellant Madgett's near miss with qualifying under the Armed Career Criminal Act. That near miss was an argument emphasized by counsel for the government in advocating for a statutory maximum term of imprisonment. And in her reasons for the upward variance, Judge Rosenstengel compared the resulting 84-month term of imprisonment to the 15-year mandatory minimum, which Mr. Madgett would have had under the Armed Career Criminal Act. Judge Rosenstengel also echoed an argument which counsel for the government had made about how Mr. Madgett avoided this on account of application of the categorical approach. And Judge Rosenstengel, in her reasoning for the upward variance, commented on the structure of the Armed Career Criminal Act preventing Mr. Madgett from facing the brunt of that statutory maximum term of imprisonment. The second way in which this upward variance was procedurally unreasonable is that Judge Rosenstengel drew unsupported inferences, speculation, about the instant offense. Specifically, she identified uncontested facts about Mr. Madgett being found in a car with a gun, with passengers who smelled of marijuana, and drew from that that Mr. Madgett's purpose went beyond the criminal purpose of simply possessing a firearm as a convicted felon. But in her words, he was begging for something dangerous, something violent to happen. We believe that this is unreasonable speculation, which is a second way in which this upward variance was procedurally unreasonable. What if she was making that point to contrast it with an effort to minimize that conduct? Your Honor, in part I think that is what she was doing, because she did at this point of her explanation for the variance say that she was disagreeing with me on what could be drawn from those facts. I had argued unsuccessfully below that this conduct was in contrast to the much more violent prior convictions, which counsel for the government emphasized, in which I had to concede given Mr. Madgett's criminal history. So I do think that that's at least in part what Judge Rosenstengel was doing. She was taking those into consideration, thinking that for all the bad things he had done, he really didn't get much punishment. Yes, Your Honor, I think that was part of Judge Rosenstengel's reasoning. But returning to the issue with the car and the inferences drawn from that, as counsel for the government notes in the government's brief, it was uncontroverted that George Madgett had told the arresting officers that he was in that car with the occupants in order to drive to a gas station to buy alcohol. And that was never challenged. That appeared both at paragraph 9 of the PSR, and it's in the sentencing transcript at page 8. So we don't have someone, for instance, who's admitting that they're going to commit a robbery, they're going to do a carjacking, they're going to do anything else nefarious. They're doing something that millions of Americans do, drive to a gas station to buy alcohol. And it's our contention that there's nothing about those facts that would support the inference that there was something more violent going on here than the simple possession of a firearm by a convicted felon. I read the transcript a little bit different, and I urge you to disagree with me. I read her to be saying more that Mr. Madgett's life is not on a good path here. Okay? He has been involved, unfortunately, in a lot of trouble. And it's trouble that is escalating. I don't remember the exact timing, but not too long before this, didn't he shoot somebody? Yes, Your Honor. He had a 2014 conviction for attempted aggravated battery with a firearm. And that was on the heels of a 2009 conviction for aggravated battery. And what did he get for that? For the aggravated battery, he received probation. For the attempted aggravated battery with a firearm, he received a sentence of time served, which was only 371 days. And he stabbed somebody and he hit somebody else with a baseball bat? Correct. Your Honor, my only point is that I read the judge to be saying, and look what we have here. He's out driving around in a car while on probation with a loaded gun and smoking marijuana. This is not a good trend. And that was one of the reasons that warranted the 84-month sentence above the top end of the guideline range. It was not, she did not say, I think they were on their way to commit a violent crime. They were going to go hold up the liquor store or anything like that. She just said the trend line here is not a good one. Well, Your Honor, she definitely did not speculate about any specific other crime that might have been in the offing. But she did use the language that he was begging for something dangerous or something violent to occur. By riding around in a car with people smoking marijuana. And that would be the basis for our claim that that was unreasonable speculation. Obviously, there's something criminal going on there. There's something going on there that none of us would want. That is a convicted felon, especially one with George Magid's history, riding around with a gun. Of course, that criminal history was reflected partly in the criminal history category, which was Category 3. But even more so in the base offense level, which was Offense Level 24. On account of him having two prior crimes of violence. I would like to reserve the remainder of your time. Yes, thank you, Your Honor. Thank you. We'll now hear from Ms. Ruppert. May it please the Court. Good morning. Laura Ruppert on behalf of the United States. As a threshold matter, Mr. Cronin, his two issues today are ones of procedural error. But as a threshold matter, I do want to address the standard of review that should apply in this case. It is the United States' position that the issues that Mr. Cronin raises today have been waived or in the alternative have been forfeited. And therefore, a plain error review standard should apply. When a district court announces a tentative sentencing decision or view and invites objections, a defendant's failure to raise a specific objection to the sentence in those circumstances can amount to waiver of the issue. And in this case, there were two separate colloquies that occurred during the sentence, wherein the defendant or appellant could have raised a contemporaneous objection and failed to do so. Specifically, there was a point after the court announced a tentative sentencing decision where the government made an oral motion to add a condition of supervised release, that being the addition of mental health treatment or an evaluation having to do with anger management issues. The court was open to that oral motion for the additional condition of supervised release. And at that point in time, that signified that the court was open to commentary on the sentence before the formal imposition of sentence. Additionally, later in the sentencing hearing, the court asked both parties whether there was any reason why the sentence should not be imposed as stated, and also asked the parties whether either party requested further elaboration of the 3553A factors, and both parties indicated no. The court also specifically asked counsel for the appellant whether or not it was satisfied that it had addressed its main arguments in mitigation, and counsel for the appellant affirmatively replied yes, that the arguments in mitigation had been appropriately addressed. So we submit that based upon that, that in fact the issues here have been waived. In the alternative, as this court has recognized that the line between waiver and forfeiture can be blurry, in the alternative we would submit that forfeiture applies as the appellant forfeited these issues as he negligently failed to assert a right or objection in a timely fashion. And if forfeiture applies, then it should be a plain error standard of review that this court should employ. With that plain error standard of review for forfeiture, the two issues that appellant raises, there was no error, plain or otherwise. Specifically with respect to the first issue that there was some sort of speculation that the court was engaging in based upon the nature and circumstances of the offense, there is no error there, plain or otherwise. The court, I think Judge Brennan, you were kind of hitting the nail on the head here, that what the court was engaging in was doing a contrast of the facts of this case compared to less serious felon in possession cases that the court had heard. Specifically, the court said that the appellant was riding in a car with three other individuals in East St. Louis, that they were smoking marijuana and that there was a loaded firearm in the car. None of those facts were disputed. And she was using that in contrast to a scenario or a situation where perhaps a convicted felon had a firearm in a bedroom, but that is less inherently dangerous than the circumstances of this case. So I don't think that there was any error, plain or otherwise, with the district court's assessment of the nature and circumstances of this case. And in appellant's brief, the seven words that they focus on is when the court engaged in this commentary, that maybe appellant wasn't out shooting a gun, but driving around in a car with a loaded weapon, with three people who are smoking marijuana, is begging for something violent or dangerous to happen. And the seven words that they focused on in their brief was, so that is very concerning of, quote, just of what really was going on. And so in appellant's brief, talking about those seven words as being speculative of some other nefarious purpose, I think that overreaches what those seven words meant. It was presented in the broader context of the nature and circumstances of the offense. And essentially, appellant is speculating that the district court was speculating. So we would submit with respect to issue one that there was no error, plain or otherwise. And then specifically with respect to appellant's second contention, that there was procedural error with respect to referencing the Armed Career Criminal Act. Again, we submit that there is no error, plain or otherwise. When looking at the totality of the sentencing transcript, it is clear that the district court's focus on the upward variance was the appellant's atrocious criminal history. And she said repeatedly that that atrocious criminal history was not sufficiently encapsulated by the guideline range that was calculated. She talked about, again, that aggravated battery at the age of 16, wherein the appellant stabbed someone in the chest and bludgeoned someone in the face with a baseball bat. That at the age of 19, that the appellant stabbed someone in the head. That at the age of, I believe it was 24, that in 2014, that the appellant was convicted for essentially offense conduct, indicating he shot someone three times, but not before choking his girlfriend and pointing a gun to her head, for which he received probation. And the court repeatedly emphasized how poorly appellant had done on supervision, repeated violations of the law, to include illegal weapons offenses. And when she was noting the illegal weapons offense, and I'm talking about an aggravated unlawful use of a weapon conviction, for which the appellant received no points because that statute was later found to be unconstitutional, that at the time he received that conviction, he was in fact a convicted felon. So had that charge been charged in the alternative, under a different Illinois statute, he would have received points, bumping him up a category for criminal history, from a category three up to a category four. And the court specifically mentioned that had he received points for that conviction and been placed in criminal history category four, his guidelines range would have been 70 to 87 months, of which the district court's 84-month sentence falls squarely within that range. And that was permissible for the court to do under the policy statement contained in the United States Sentencing Guideline 4A1.3, that the court can consider varying upwards where a criminal history category substantially under-represents the criminal history of the offender and the likelihood to re-offend. That's exactly what she did. So with respect to the upward variance, that was really, I think, in reading the transcript, more tied to that policy statement and the lack of points given to that aggravated unlawful use of a weapon charge. But with respect to the references to the Armed Career Criminal Act, that that was permissive for the court to do. And I speak of the case that we cited in our brief, United States v. Ferguson, wherein the court, hearing a case about a vehicular robbery where a gun was used, kind of found that that case was more akin to an attempted murder and talked about the first-degree murder guideline in reaching its upward variance sentence. And this court said in that case, Ferguson, that it's not as though the court used the first-degree murder guideline in calculating the offense level. The analogy made the judge's reasoning clearer and more concrete. And that's exactly what happened here. The court in this case didn't even go to the Armed Career Criminal Guideline in Chapter 4. She did not even consult that guideline. She just made reference to this statute, the Armed Career Criminal Act, as providing additional clarity and concreteness to her upward variance in addition to hinting to the policy guideline in United States Guideline 4A1.3. So again, there was no error, let alone a plain one, with respect to the district court's reference to the Armed Career Criminal Act. If there are no further questions from the court, I would yield to the appellant. Thank you. Thank you. Thank you, Ms. Ruppert. Mr. Cronin, rebuttal. Thank you, Judge Brennan. I'd like to make three points in rebuttal, please. First of all, while Judge Rosenstangle did reference possible underrepresentation of criminal history, she explicitly disavowed that as a basis for the resulting sentence. She said on the record that in the old days, or words to that effect, there was that upward departure, but she said, I'm not going to depart. Instead, I'm going to do an upward variance. And so the first point in rebuttal is that policy statement in the guidelines cannot support the upward variance because Judge Rosenstangle explicitly disavowed it as a basis for that. Secondly, and I apologize, this is an obvious point, George Magid is not a sympathetic appellant. I stand here knowing that just as any defense counsel would have realized that standing in his sentencing hearing. He's not. That's a harsh reality. But of course, it makes these procedural protections all the more vital. And that's what I'm relying on here this morning. And finally, in rebuttal, the most important of these procedural protections as they apply to George Magid is Rule 51 of the Federal Rules of Criminal Procedure. As explained in our briefs, we believe this is what makes the de novo review, which normally applies to procedural errors, applicable here. And I think I can best illustrate that by addressing the two questions asked by the court towards the end of the hearing in reverse order. First, I was asked, do you request any further elaboration on my consideration of the statutory factors? At that point, Judge Rosenstangle had thoroughly explained her reasoning. I believe that she had ruled. And of course, that falls squarely within subsection A of Rule 51 of the Federal Rules of Criminal Procedure, which says that no objection or, in the language of the rule, exception need be made if the court had ruled. And I believe this interpretation is consistent with this court's precedent in Cortland and in Pennington. Second question was, do you know of any reason why this sentence should not be imposed as stated? Of course, most of what I have said at the sentencing hearing up to that point consisted of reasons why we didn't think an upward variance should be imposed. I've been arguing, in fact, for the low end of the guideline range, a term of 57 months. So consequently, I had preserved any claim of error under one of the two ways identified in subsection B of Rule 51 in that I had identified for the court what the defense was asking for. For these reasons, we ask the court to apply the de novo standard and to remand for resentencing. Thank you. Thank you, Mr. Cronin. Thank you, Ms. Ruppert. The case will be taken under advisement.